AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

I-cloud account marroquingena@icloud.com
("Target Account 1")

)
)
)
)
)

Case No. **25-mj-01802**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert Forbes HSI Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ April 14, 2025 _____

*Judge's signature*

City and state: San Diego, California

Hon. Michael S. Berg, United States Magistrate Judge

*Printed name and title*

1

<u>ATTACHMENT A-1</u>

2

3

4

     This warrant applies to information associated with marroquingena@icloud.com, **Target Account 1**, that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## ATTACHMENT B

3     **I.**     Service of Warrant

4     The officer executing the warrant shall permit Apple Inc. (Apple), as custodian of
5     the computer files described in Section II below, to locate the files and copy them
6     onto removable electronic storage media and deliver the same to the officer.

7     **II.**     To the extent that the information described in Attachments A-1 and A-2 is within
8     the possession, custody, or control of Apple, regardless of whether such
9     information is located within or outside of the United States, and including any
      emails, records, files, logs, or information that has been deleted but is still available
10    to Apple, or has been preserved pursuant to a request made under 18 U.S.C. §
11    2703(f) on **September 20, 2024**, Apple is required to disclose the following
      information to the government for each account or identifier listed in Attachments
12    A-1 and A-2:

13    a.  All records or other information regarding the identification of the account, to
14        include full name, physical address, telephone numbers, email addresses
          (including primary, alternate, rescue, and notification email addresses), and
15        verification information for each email address), the date on which the account
16        was created, the length of service, the IP address used to register the account,
          account status, associated devices, methods of connecting, and means and
17        source of payment (including any credit or bank account numbers);

18    b.  All records or other information regarding the devices associated with, or used
19        in connection with, the account (including all current and past trusted or
          authorized iOS devices and computers, and any devices used to access Apple
20        services), including serial numbers, Unique Device Identifiers ("UDID"),
21        Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media
          Access Control ("MAC") addresses, Integrated Circuit Card ID numbers
22        ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity
23        Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile
          Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile
24        Subscriber Integrated Services Digital Network Numbers ("MSISDN"),

25

26                                           3

27

28

International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.  The contents of all emails associated with the account between September 28, 2023 and October 28, 2023 including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.  The contents of all instant messages associated with the account from September 28, 2023 to October 28, 2023 including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.  The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.  All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of

4

Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.  All records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.  All records pertaining to the types of service used;

i.  All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.  All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the Government within 14 days of issuance of this warrant.

**III**.  The search of the data supplied by Apple pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically-Stored Information" section of the affidavit submitted in support of this search warrant, and will be limited to evidence of violations of 21 U.S.C. Sections 952, and 960 for the period of September 28, 2023 to October 28, 2023, and to the seizure of:

a.  Evidence indicating efforts to import methamphetamine, fentanyl, cocaine, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b.  Evidence indicating accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine, fentanyl, cocaine, or some other federally controlled substance from Mexico into the United States, or

possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c.     Evidence indicating co-conspirators, criminal associates, or others involved in importation of methamphetamine, fentanyl, cocaine, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d.     Evidence indicating travel to or presence at locations involved in the importation of methamphetamine, fentanyl, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points; and

e.     Evidence indicating the identity of the user(s) of the subject accounts, and any co-conspirators involved in the activities in III(a)-(d) above, including records that help reveal the whereabouts of such person(s);

f.     Evidence that provide context to any communications or records described above, such as messages sent or received in temporal proximity to any relevant electronic communications and any electronic communications tending to identify users of the subject accounts;

g.     Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner; and

h.     Evidence indicating the email account owner's state of mind as it relates to the crime under investigation.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT FOR iCLOUD ACCOUNT

I, Task Force Officer Robert Forbes, being duly sworn, hereby state as follows:

## INTRODUCTION

1.    I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple Inc. ("Apple") to disclose to the government records and other information, including the contents of communications, associated with the following Apple IDs, believed to be used by Gena MARROQUIN:

(1) marroquingena@icloud.com ("**Target Account 1**");

(2) marroquin.genna@outlook.com ("**Target Account 2**").

(collectively, the "**Target Accounts")**, that is stored at premises owned, maintained, controlled, or operated by Apple, a company headquartered at One Apple Park Way, Cupertino, CA 95014, as fully described in Attachment A (which is incorporated fully herein).

2.    Based on the facts as set forth in this affidavit, there is probable cause to believe that the information described in Attachment A contains evidence of violations of Title 21, United States Code, Sections 952, and 960 ("Target Offenses") as described in Attachment B (which is incorporated fully herein). The information to be disclosed by Apple and searched by the government is described in Attachments A and B. Further, there is probable cause to believe that the Target Offenses have been committed by the respective holder of the **Target Accounts**, and others not yet known.

3.    The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Accounts**, it does not contain

1

1    all the information known by me or other federal agents regarding this investigation, but
2    only contains those facts believed to be necessary to establish probable cause.

3                          **EXPERIENCE AND TRAINING**

4        4.    I have been employed by the San Diego County Sheriff's Department since
5    November of 1993. I have been a detective for over twelve years, and I have been assigned
6    as a Task Force Officer with Homeland Security Investigations (HSI) since January of
7    2019. I am currently assigned to the HSI Office of the Special Agent in Charge, in San
8    Diego, California.

9        5.    During my tenure with HSI and the Sheriff's Department, I have participated
10   in the investigation of various narcotics trafficking organizations involved in the
11   importation and distribution of controlled substances into and through the Southern
12   District of California. Through my training, experience, and conversations with other law
13   enforcement officers experienced in narcotics trafficking investigations, I have gained a
14   working knowledge of the operational habits of narcotics traffickers, in particular those
15   who attempt to import narcotics into the United States from Mexico at Ports of Entry.

16       6.    Through my training, experience, and conversations with other members of
17   law enforcement, I have gained a working knowledge of the operational habits of
18   transnational criminal organizations. I am aware that it is common practice for organized
19   criminal organizations to work in concert with other individuals and to do so by utilizing
20   cellular telephones. I am also aware that iPhones, such as the one seized in this case, can
21   have content backed up in the iCloud. Because they are mobile, the use of cellular
22   telephones permits members of criminal networks to easily carry out various tasks related
23   to their activities, including, *e.g.*, remotely monitoring the progress of shipments while still
24   in transit, providing instructions to couriers, warning accomplices about law enforcement
25   activity, and communicating with co-conspirators who are transporting of illicit proceeds.

26       7.    In preparing this affidavit, I have conferred with other agents and law
27   enforcement personnel who are experienced in the area of narcotic investigations. Further,

28

I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Dates, times, and amounts are approximate.

8.    Based on my training and experience, I also know that controlled substances trafficking organizations depend upon maintaining their extensive contacts throughout multiple jurisdictions. This is done to maintain contact concerning the sources of supply for controlled substances and for coordinating the delivery of controlled substances. It is essential that such co-conspirators maintain contact with one another and utilize expedient means of communication. To do this, continued access to telephone communication is necessary. The use of telephones is essential in maintaining timely long distance and local contacts with the original suppliers and those down the organizational chain to the local distributors. The telephone enables co-conspirators to maintain contact with controlled substances associates, controlled substances suppliers, and controlled substances customers. I am aware that those involved in illegal controlled substances conspiracies often list their telephones, and cellular telephones, in the names of others to conceal their identities and illegal purposes. It is likewise essential that such organized groups meet to formulate plans concerning controlled substances or other illegal activities, and to divide their illegal proceeds. I am also familiar with how controlled substances traffickers speak to each other and generally conduct business. For example, I am aware that controlled substances traffickers often use telephones to discuss, plan and coordinate controlled substances distribution activities.

## PROBABLE CAUSE

9.    On October 28, 2023, at approximately 07:41 am, Gena R. MARROQUIN ("MARROQUIN"), a United States Citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle lane #2. MARROQUIN was the

3

1  driver and registered owner of a 2017 Honda Ridgeline ("the vehicle") bearing California

2  license plates and was accompanied by her five-year-old son.

3      10.    A Customs and Border Protection Officer ("CBPO") received two negative

4  Customs declarations from MARROQUIN. MARROQUIN stated she was crossing the

5  border to go to San Diego, California. The CBPO stated that MARROQUIN appeared

6  nervous when asked to unlock the factory compartment in the cargo area of the vehicle.

7  The CBPO was unable to get the compartment open at that time. The vehicle was sent to

8  secondary.

9      11.    A CBPO operating the Z-Portal X-Ray machine detected anomalies in the

10  rear cargo space of the vehicle.

11      12.    A Canine Enforcement Team was conducting secondary inspection

12  operations when the Human and Narcotic Detection Dog alerted to the rear tailgate seam

13  of the vehicle.

14      13.    Further inspection of the vehicle resulted in the discovery of 50 packages

15  concealed in the factory compartment in the cargo area of the vehicle, with a total

16  approximate weight of 55 kgs (121 lbs). A sample of the substance contained within the

17  packages field tested positive for the characteristics of cocaine.

18      14.    MARROQUIN was placed under arrest at approximately 08:52 am, and

19  charged with a violation of Title 21, United States Code, 952 and 960, importation of a

20  controlled substance.

21      15.    MARROQUIN's cell phone was found on the center console of the vehicle

22  and seized by a CBPO who was tasked to perform a secondary inspection of the vehicle

23  and inventory all the property seized from MARROQUIN and her vehicle.

24      16.    On October 30, 2023, the Honorable Daniel E. Butcher of the United States

25  Southern District Court signed a search warrant under case number 23MJ3297 authorizing

26  the examination of MARROQUIN's cell phone. The HSI San Diego Computer Forensics

27  Group attempted to examine MARROQUIN's cell phone but was unable to do so due to

28

4

1    limitations of the software that was available before the search warrant expired.  After
2    software upgrades were put in place to enable the examination of the cell phone, the
3    Honorable Barbara L. Major of the United States Southern District Court signed search
4    warrant number 24MJ1497 on April 16, 2024, authorizing the examination of
5    MARROQUIN's cell phone. The HSI San Diego Computer Forensics Group conducted a
6    forensic extraction of MARROQUIN'S phone and TFO Forbes examined the forensic
7    extraction.

8         17.    During an examination of the extraction of MARROQUIN's cell phone, TFO
9    Forbes noticed the download did not contain any WhatsApp data, but there were
10   indications that the WhatsApp application was installed on MARROQUIN's cell phone
11   shortly before she was arrested. Several images dated from October 19 to 25, 2023, were
12   in the downloaded data and appeared to be screenshots taken from MARROQUIN's cell
13   phone on those dates. Multiple screenshot images showed incoming WhatsApp messages
14   and had the same screen saver as the one on MARROQUIN's cell phone when it was
15   seized. Additionally, a screenshot of the cell phone's applications library showed
16   WhatsApp in the library along with the same screen saver and similar applications to the
17   ones in MARROQUIN's cell phone when it was examined. Based on this, it appears that
18   the WhatsApp application was deleted from MARROQUIN's cell phone within
19   approximately three days of MARROQUIN's arrest.

20        18.    On November 21, 2024, the Honorable Allison H. Goddard of the United
21   States Southern District Court signed a search warrant under case number 23MJ4373
22   authorizing the re-examination of the MARROQUIN's cell phone and the previous
23   download obtained from it in an attempt to retrieve any available WhatsApp data.

24        19.    A Certified Forensics Agent (CFA) re-parsed the data previously extracted
25   from MARROQUIN's cell phone. The data showed that on October 28, 2023, at
26   approximately 7:42am, the WhatsApp chat application was uninstalled from
27   MARROQUIN's cell phone. This time was approximately one minute after

28

1    MARROQUIN applied for entry into the United States on the date of her arrest. There

2    were approximately 1359 WhatsApp message fragments still in the forensic data. The

3    parsed data also indicated that data from the WhatsApp chat was most likely stored in the

4    iCloud for MARROQUIN's cell phone before the WhatsApp application was deleted.

5        20.    Information extracted from MARROQUIN's cell phone indicated the phone

6    was named "Gena's iPhone." **Target Account 1** and **Target Account 2** were both listed

7    as Apple IDs associated to MARROQUIN's cell phone.

8        21.    I am aware that it is common practice for organized criminal organizations

9    to work in concert utilizing cellular telephones and communication applications. A

10    common tactic utilized by narcotics traffickers is to smuggle controlled substances into

11    the United States from Mexico by concealing the controlled substances in vehicles or on

12    persons entering the United States at Ports of Entry such as the San Ysidro POE and the

13    Otay Mesa POE. With respect to the importation of narcotics in this manner, I am aware

14    that narcotics traffickers in Mexico frequently communicate with the individual

15    responsible for importing the concealed narcotics into the United States. These

16    communications can occur before, during and after the narcotics are imported into the

17    United States. For example, prior to the importation, narcotics traffickers frequently

18    communicate with the transporters regarding arrangements and preparation for the

19    narcotics importation. When the importation is underway, narcotics traffickers frequently

20    communicate with the transporters to remotely monitor the progress of the narcotics,

21    provide instructions, and warn accomplices about law enforcement activity. When the

22    narcotics have been imported into the United States, narcotics traffickers may

23    communicate with the transporters to provide further instructions regarding the delivery

24    of the narcotics to a destination within the United States.

25        22.    Based upon my training, experience, and consultations with law enforcement

26    officers experienced in narcotics trafficking, and all the facts and opinions set forth in this

27    affidavit, I am aware that communication applications, such as iCloud, can and often do

28

6

1  contain electronic evidence, including, data, such as messages, chats and chat logs from
2  various third-party applications, photographs, audio files, videos, and location data.

3      23.    Based upon my knowledge of the investigation and my training and
4  experience, I believe that the **Target Accounts** will reveal efforts to coordinate and
5  facilitate the importation and subsequent distribution of controlled substances within the
6  United States. Unless disabled by a sophisticated user, iCloud accounts are automatically
7  created, and information automatically backed up. If the user of the account is using an
8  Apple device such as an iPhone, device information will be automatically backed up to
9  their iCloud account.

10      24.    Based upon my experience investigating narcotics traffickers, I believe that
11  MARROQUIN was working with other co-conspirators while trafficking narcotics into
12  the United States and that she was likely utilizing her cell phone which is tied to the
13  **Target Accounts** to do so. I believe that information contained in the **Target Accounts**
14  including: subscriber and/or user information, all electronic mail, files, cloud storage,
15  location information, search history, images, text messages, voicemail, histories, buddy
16  or friend lists, contacts, iCloud Drives, iCloud files, iCloud Backup and Restore, photos,
17  notes, videos, calendars, messages profiles, methods of payment, detailed billing records,
18  access logs, and transactional data will contain evidence of drug importation and
19  distribution and may lead to the identification of co-conspirators. I further believe that
20  evidence of drug trafficking (such as iMessages, text messages, WhatsApp messages, and
21  Facebook Messenger communications, photos, videos, locations, and contacts) may be
22  stored in the **Target Accounts**. In my training and experience, narcotics traffickers may
23  be involved in the planning and coordination of drug importation events, as well as large-
24  volume sales in the days and weeks prior to such an event. From my training and
25  experience I also know that narcotics traffickers are often in communication with co-
26  conspirators well before they transport their first load of narcotics, and often they have
27  transported multiple loads of narcotics in the past before being caught. I am requesting
28

1  account data for the **Target Accounts** for the period beginning on September 28, 2023,

2  up to and including October 28, 2023.

3      25.    Additionally, it is believed that the records are still available to Apple as a

4  request to preserve was made under 18 U.S.C. § 2703(f).

5                    **INFORMATION REGARDING APPLE ID AND iCLOUD**

6      26.    Apple is a United States company that produces and sells a variety of

7  computer devices, software, and services to the public, including the iPhone, iPad, iPod

8  Touch, and HomePod which use the iOS operating system, desktop and laptop computers

9  based on the Mac OS operating system, the AppleWatch which uses the Watch OS

10  operating system, and Apple TV, which uses the tvOS operating system.

11      27.    Apple provides a variety of services that can be accessed from Apple devices

12  or, in some cases, other devices via web browsers or mobile and desktop applications

13  ("apps"). As described in further detail below, the services include email, instant

14  messaging, and file storage:

15          a.    Apple provides email service to its users through email addresses at

16  the domain names mac.com, me.com, and icloud.com.

17          b.    iMessage and FaceTime allow users of Apple devices to communicate

18  in real-time. iMessage enables users of Apple devices to exchange instant messages

19  ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime

20  enables those users to conduct video calls.

21          c.    iCloud is a file hosting, storage, and sharing service provided by

22  Apple. iCloud can be utilized through numerous iCloud-connected services and can also

23  be used to store iOS device backups and data associated with third-party apps.

24          d.    iCloud-connected services allow users to create, store, access, share,

25  and synchronize data on Apple devices or via icloud.com on any Internet-connected

26  device. For example, iCloud Mail enables a user to access Apple-provided email accounts

27  on multiple Apple devices and on icloud.com. iCloud Photo Library and My Photo Stream

28

can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

   e. Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

   f. Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

   g. Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

   h. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

   28. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. An Apple ID takes the form of the full email address submitted by the user to create the

9

account; it can later be changed. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

29.    Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

30.    Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records

10

relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

31.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs in to FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

32.     Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant

11

1  messaging service, can be configured to regularly back up a user's instant messages on
2  iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can
3  nonetheless be decrypted by Apple.

4    33.    As described above this is an investigation into a conspiracy to distribute
5  controlled substances that involves the use of cellular telephones to coordinate the
6  distribution of those controlled substances. Based upon my training and experience as a
7  Special Agent, and consultations with law enforcement officers experienced in controlled
8  substances investigations, and all the facts and opinions set forth in this affidavit, I submit
9  the following:

10          a.  Drug traffickers will use cellular/mobile telephones because they are mobile
11             and they have instant access to telephone calls, text, web, and voice
12             messages.
13          b.  Drug traffickers will use cellular/mobile telephones because they are able to
14             actively monitor the progress of their illegal cargo while the conveyance is
15             in transit.
16          c.  Drug traffickers and their accomplices will use cellular/mobile telephones
17             because they can easily arrange and/or determine what time their illegal
18             cargo will arrive at predetermined locations.
19          d.  Drug traffickers will use cellular/mobile telephones to direct couriers to
20             synchronize an exact drop off and/or pick up time of their illegal cargo.
21          e.  Drug traffickers will use cellular/mobile telephones to notify or warn their
22             accomplices of law enforcement activity to include the presence and posture
23             of marked and unmarked units, as well as the operational status of
24             checkpoints and border crossings.
25          f.  Drug traffickers and their co-conspirators often use cellular/mobile
26             telephones to communicate with load drivers who transport their narcotics
27             and/or drug proceeds.
28

12

g. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

34. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, WhatsApp messages, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

35. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

36. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g.,

13

information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

37.    Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

38.    Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

**PROCEDURES FOR ELECTRONICALLY-STORED INFORMATION**

39.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Apple to disclose to the government copies of the records and other information (including the content of communications and stored data) particularly described in Section II of Attachment B. Upon receipt of the information described in Section II of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

40.    Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. Apple's personnel are not.  It would be inappropriate and impractical for federal agents to search Apple's vast computer network for the relevant accounts and then to analyze the

14

1  contents of those accounts on Apple's premises.  The impact on Apple's business would
2  be disruptive and severe.

3      41.    Therefore, I request authority to seize all content, including electronic mail
4  and attachments, stored instant messages, stored voice messages, photographs, and any
5  other content from the Target Accounts, as described in Attachment B.  In order to
6  accomplish the objective of the search warrant with a minimum of interference with
7  Apple's business activities, to protect the privacy of its subscribers whose accounts are
8  not authorized to be searched, and to effectively pursue this investigation, agents seek
9  authorization to allow Apple to make digital copies of the entire contents of the accounts
10 subject to seizure. Those copies will be provided to me or to any authorized federal agent.
11 The copy will be imaged and the image will then be analyzed to identify communications
12 and other electronic records subject to seizure pursuant to Attachment B. Relevant
13 electronic records will be copied to separate media. The original media will be sealed and
14 maintained to establish authenticity, if necessary.

15      42.    Analyzing the data to be provided by Apple may require special technical
16 skills, equipment, and software.  It may also be time-consuming.  Searching by keywords,
17 for example, often yields many thousands of "hits," each of which must be reviewed in
18 its context by the examiner to determine whether the data is within the scope of the
19 warrant. Merely finding a relevant "hit" does not end the review process. Keyword
20 searches do not capture misspelled words, reveal the use of coded language, or account
21 for slang or typographical errors.  Keyword searches are further limited when electronic
22 records are in or use foreign languages. Certain file formats also do not lend themselves
23 to keyword searches.  Keywords search text.  Attachments to electronic mail messages
24 are often in proprietary formats that do not store data as searchable text.  Instead, such
25 data is saved in a proprietary non-text format. And, as the volume of storage allotted by
26 service providers increases, the time it takes to properly analyze recovered data increases
27 dramatically.  Apple  does  not  always  organize  the  electronic  files  it  provides

28

1  chronologically, which makes review even more time consuming and may also require
2  the examiner to review each page or record for responsive material.

3      43.    Based on the foregoing, searching the recovered data for the information
4  subject to seizure pursuant to this warrant may require a range of data analysis techniques
5  and may take weeks or even months.  Keywords need to be modified continuously based
6  upon the results obtained and, depending on the organization, format, and language of the
7  records provided by the Apple, examiners may need to review each record to determine
8  if it is responsive to Attachment B. The personnel conducting the examination of the ISPs'
9  records will complete the analysis within ninety (90) days of receipt of the data from the
10 service provider, absent further application to this court.

11     44.    Based upon my experience and training, and the experience and training of
12 other agents with whom I have communicated, it is necessary to review and seize all
13 electronic communications that identify any users of the **Target Accounts** and any
14 electronic communications sent or received in temporal proximity to incriminating
15 messages that provide context to the incriminating communications.

16     45.    All forensic analysis of the imaged data will employ search protocols
17 directed exclusively to the identification and extraction of data within the scope of this
18 warrant.

19                                   **CONCLUSION**

20     46.    Based on the forgoing, I request that the Court issue the proposed search
21 warrant.

22     47.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer
23 is not required for the service or execution of this warrant.  The government will execute
24 this warrant by serving the warrant on Apple.  Because the warrant will be served on
25 Apple, who will then compile the requested records at a time convenient to it, reasonable
26 cause exists to permit the execution of the requested warrant at any time of the day or
27 night.

28                                        16

I swear the foregoing is true and correct to the best of my knowledge and belief.

Task Force Officer Robert Forbes
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1

by telephone on this 14th day of April, 2025.

The Honorable Michel S. Berg
United States Magistrate Judge

17